UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANON DAWN BENTLEY,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Case No. 17-13662

Terrence G. Berg
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 15)

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On November 10, 2017, plaintiff Shanon Dawn Bentley[1] filed the instant

suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3),

District Judge Terrence G. Berg referred this matter to the undersigned for the

purpose of reviewing the Commissioner's unfavorable decision denying Bentley's

claim for disability benefits.  (Dkt. 3).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 13, 15).  Bentley also filed a reply in

support of her motion.  (Dkt. 16).

_____

[1] In some of the records, plaintiff's name is Shanon Nadeau.  She appears to have changed her name sometime in 2015.  (Tr. 247)

B.    Administrative Proceedings

Bentley filed an application for a supplemental security income on December 9, 2014, alleging disability beginning on March 16, 2009.  (Tr. 10).[2] The claim was initially disapproved by the Commissioner on April 10, 2015.  *Id.* Bentley requested a hearing and on June 13, 2016, she appeared with counsel, before Administrative Law Judge ("ALJ") Richard L. Sasena, who considered the case *de novo*.  (Tr. 26-51).  In a decision dated August 18, 2016, the ALJ found that Bentley was not disabled.  (Tr. 7-21).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 15, 2017, denied Bentley's request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

---

[2] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Bentley was born in 1991 was 23 years old on the date the application was filed.  (Tr. 20).  She has no past relevant work.  *Id.*  Bentley alleges that she cannot work full-time because of her inability to communicate and her lapses in concentration.  (Tr. 30-31).

The ALJ applied the five-step disability analysis and found at step one that Bentley had not engaged in substantial gainful activity since the application date. (Tr. 12).  At step two, the ALJ found that Bentley's autism spectrum disorder, anxiety disorder, social phobia, and major depressive disorder were "severe" within the meaning of the second sequential step.  (Tr. 13).  However, at step three, the ALJ found no evidence that her impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 13-14).

Thereafter, the ALJ assessed Bentley's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to simple, routine, repetitive tasks that require little judgment and can be learned in a short period; no production line work; jobs involving only occasional interaction with coworkers wherein she can be in proximity but not as a team member.

(Tr. 15).  At step four, the ALJ found that Bentley had no past relevant work.  (Tr. 20).  At step five, the ALJ denied benefits because he found that there were jobs that exist in significant numbers in the national economy that plaintiff can perform. *Id*.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written

decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis and Conclusions</u>

Bentley argues that the ALJ violated the treating physician rule by not according controlling weight to the opinion of her treating psychiatrist, Dr. David Harris.  More specifically, Bentley argues that the ALJ's reliance on normal "mental status" examinations that indicated the following: she was oriented; cooperative; had normal thought content, affect, psychomotor activity, attention, and concentration; and denied hallucinations or suicidal ideations, was not appropriate because she is not claiming to be psychotic or intellectually challenged.  Instead, Bentley explains that her claim is based on conditions that significantly affect her ability to interact and communicate with others.  Bentley says the ALJ simply disregarded ongoing notations in the records of both Dr. Harris and therapist Kathleen Yaroch evidencing ongoing difficulties as to interaction in communication which are crux of her claim.  Bentley also argues that

the other record evidence on which the ALJ relied to undermine Dr. Harris'

opinion, including self-reports of socializing with friends, obtaining a college

degree and working in a student editing job, along with her GAF scores of 50, and

the opinion of Dr. Balunas (the state agency reviewing psychologist) are not

sufficient justification to discount Dr. Harris' opinion.

In response, the Commissioner argues that the ALJ's finding that Dr. Harris'

opinion was deserving of only "some weight" for three reasons: (1) because it was

not supported by his treatment notes; (2) because Bentley engaged in activities that

were inconsistent with Dr. Harris' suggested limitations; and (3) because Global

Assessment Functioning (GAF) scores in the treatment records were inconsistent

with Dr. Harris' opinion and Bentley's allegation that she could not work.  (Tr. 18-

19).  Accordingly, the Commissioner maintains that the ALJ's decision to give Dr.

Harris's opinion only some weight is supported by substantial evidence.

The opinion of a treating physician should be given controlling weight if it

is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic

techniques," and (2) "not inconsistent with the other substantial evidence in [the]

case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2).  Once an ALJ has determined that a treating source

opinion is not entitled to controlling weight, the ALJ must give good reasons for

the weight accorded to the opinion.  The reasons provided must be supported by

the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.*; *see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight. *Gayheart* at 376-77.

"Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two

treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions).  In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was harmless.  391 Fed. Appx. at 440-41.  The court found that the ALJ indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all, when the ALJ explained that the state agency physicians found that the plaintiff did not have a "diminished capacity for lifting/carrying."  *Id*.  And although the physician stated that plaintiff could walk for only twenty minutes in an eight-hour workday and his ability to sit was limited, other medical evidence showed that he could stand and sit for six hours out of eight.  *Id.* at 441.  Further, the plaintiff's own statements undermined the doctor's opinion.  *Id.*

Dr. Harris provided a Mental Medical Source Statement in April 2016 in which he indicated Bentley was unable to meet competitive standards in her ability to ask simple questions or request assistance, respond appropriately to changes in a routine work setting, deal with stress of semi-skilled and skilled work, travel in unfamiliar places, or use public transportation.  He further opined that she was seriously limited in her ability to work in coordination with or proximity to others

12

without being unduly distracted, complete a normal workday and workweek

without interruptions from psychologically based symptoms, get along with co-

workers or peers without unduly distracting them or exhibiting behavioral

extremes, and deal with normal work stress.  He said that Bentley's social phobia

severely limited her ability to communicate with employers or coworkers.

Furthermore, she was unable to talk or would take a long time to answer.  He

remarked that it would be unlikely that she could successfully complete a job

interview and that the stress of interacting with people in the workplace could

exacerbate her symptoms.  He anticipated Bentley would likely be absent from

work more than four days a month.  At that time, Dr. Harris noted a GAF of 50,

which as the ALJ pointed out, was similar to a GAF in the past year.  (Tr. 18, 309-

314).  The ALJ analyzed Dr. Harris' opinion as follows:

> The opinion of Dr. Harris is given some weight because
> it is not supported by his treatment notes which have
> revealed essentially unremarkable examinations.
> Moreover, the claimant had worked in a student related
> editing job, and had attempted to volunteer at a local
> library, as noted above. In addition, she attended college
> while living in a dorm and reported socializing with
> friends and others. Due to the inconsistencies with Dr.
> Harris' opinion and treatment notes, his opinion is
> accordingly rendered less persuasive. However, great
> weight is granted to his noted GAF of 50, which is
> consistent with the ability to work (*Smith v. Comm'r of
> Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)).
>
> Although psychiatric progress notes including medication
> reviews indicated the claimant was anxious during her

> interviews and has intermittently reported isolation at
> home, her mood was reportedly stabilized with treatment
> with the claimant denying excessive anxiety or any major
> issues (Ex 7F). Moreover, mental status examinations
> indicate she was oriented and cooperative with normal
> thought content, affect, psychomotor activity, and
> attention and concentration, and she denied
> hallucinations or suicidal ideations (Ex 4F/58; 55; 45; 42;
> 39; 37; 34; 31; 27-28; 20; 16-17; 12-13; Ex7F/59; 52; 48-
> 49; 45; 26; 12; 4).
>
>             * * *
>
> The GAF scores ranging from 40 to 50 assigned by Dr.
> Harris generally suggest the claimant is unable to work.
> However, the conclusions and the objective findings are
> internally inconsistent. Aside from the claimant's noted
> anxiety and reported intermittent social isolation, the
> claimant's presentations at her examinations show she
> was cooperative with normal attention/concentration,
> thought process, thought content, mood, and
> psychomotor activity (Ex 4F/27-28; 16-17; 12; 9; 7; 3-4;
> 7Fi57; 43; 41; 37-38; 29-30; 19-20; 8-9; 1-2).

(Tr. 18-19).

The ALJ gave most of Dr. Harris' opinion some weight because it was not

supported by his treatment notes and gave his GAF score of 50 great weight

because it supported Bentley's ability to work.  (Tr. 18).  Having discussed the

inconsistencies between Dr. Harris' opinion and the other evidence in the record in

the decision, the ALJ did not err in determining that the opinion was not entitled to

controlling weight.  *See Wilson*, *supra*.  In discussing the inconsistency and lack of

supportability between Dr. Harris' opinion other medical records, the ALJ attacked

both the consistency and supportability of the opinion, as discussed more fully below.

The ALJ accurately observed that Dr. Harris' opinion is inconsistent with the other record evidence, as the record reflects substantial improvements in Bentley's symptoms of the course of treatment, which reflect greater abilities than those found in Dr. Harris's opinions. In December 2014 treatment records reflect that Bentley's speech was soft, but she gradually became more willing to speak louder. (Tr. 259). She expressed difficulty interacting with others, but she was able to file paperwork to change her name. *Id*. In January 2015, Bentley told her therapist that "speaking in court [to complete her name change] was not as difficult as she anticipated." (Tr. 248). That same month, Dr. Harris described her as "cooperative" during a medication review (Tr. 243), and in February 2015, her therapist noted that her speech was within normal limits. (Tr. 236). Bentley's therapist also reported that she had just returned from visiting a friend for the weekend; she was engaged in the session, projected her voice, and made better eye contact than in previous sessions. (Tr. 237).

In March 2015, Dr. Harris noted that Bentley was cooperative, and indicated that she was doing well on her medication. (Tr. 229-30). At that time, her speech was within normal limits. (Tr. 230). A few months later, therapy treatment notes reflect that Bentley had "close friends," and her therapist described

her as "intelligent" and "inquisitive."  (Tr. 337).  Bentley socialized with friends
and family, and she indicated she wanted to live independently.  (Tr. 337).  In
January 2016, she told her therapist that she could "picture herself in an
apartment."  (Tr. 331).  And in March 2016, Bentley told her therapist that she
"likes being in the college atmosphere," and she was less worried about others
rejecting her.  (Tr. 317.)

In addition, the ALJ's conclusion that Dr. Harris's opinion was inconsistent
with Bentley's activities is also supported by substantial evidence.  With respect to
Bentley's college experience, the ALJ appropriately noted she attended college,
she lived in a dorm, and reported socializing with friends and others.  (Tr. 18).
Bentley told her therapist that she liked being in the "college atmosphere" (Tr.
317), and that she "gets together with friends and family socially."  (Tr. 337).
Bentley's mother also testified that she made friends with a classmate who served
as a "mom figure" to her.  (Tr. 38).  Thus, substantial evidence supports the ALJ's
conclusion that Bentley's ability to socialize was not as limited as she claimed.

The parties disagree over the significance of Bentley's apparent work as a
student editor and her willingness to volunteer.  Bentley asserts that the record
contains no evidence about the nature of the student editing job and no volunteer
opportunities ever materialized.  The Commissioner points out that Bentley's
ability to work in any capacity is inconsistent with her allegations of total

disability. *See Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988) ("Any work done during a period of claimed disability may show a claimant can engage in substantial gainful activities."); *see also* 20 C.F.R. § 416.912(b)(iii) (2016) (listing "efforts to work" as relevant evidence); *id*. § 416.927(c)(6) (allowing consideration of "other factors ..., which tend to support or contradict the medical opinion").

The medical and other evidence outlined above provides substantial evidence in support of the ALJ's determination that Dr. Harris' opinion is entitled to less than controlling weight. Having discussed the medical evidence which contradicts and is inconsistent with Dr. Harris' opinion, the ALJ provided good reasons for the weight determination. While the ALJ did not specifically address the nature and extent of the treating relationship, or any specialization in which Dr. Harris' practices, this omission is harmless. As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.,* 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times." In *Francis*, the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis. *Id.* at 804-05. As long as the goal of the regulation is met, i.e. providing a clear understanding of the reasons for the weight given to a treating physician's opinion, any procedural error will be harmless. As

demonstrated above, the goal of the regulation has been met here.  The reasons the

ALJ gave Dr. Harris' opinion only some weight are sufficiently clear.

Bentley also faults the ALJ for giving State agency reviewing psychologist

Dr. Balunas' opinion more weight than Dr. Harris' opinion.  As explained,

substantial evidence supports the ALJ's decision to discount Harris' opinion, and it

is well-established that, under certain circumstances, opinions from reviewing

State agency physicians "may be entitled to greater weight than the opinions of

treating or examining sources."  SSR 96-6p; 1996 WL 374180, at *3; *Brooks v.

Comm'r of Soc. Sec.*, 531 Fed. Appx. 636, 642 (6th Cir. 2013) ("[O]pinions from

State agency medical and psychological consultants ... may be entitled to greater

weight than the opinions of treating or examining sources.") (quoting SSR 96-6p,

1996 WL 374180, at *3); *Benson v. Colvin*, 2014 WL 3919577, at *9 (E.D. Ky.

Aug. 11, 2014) ("[I]t is not a *per se* error to give more weight to the opinion of a

non-examining physician than that given to an examining or treating physician's

opinion.").  Thus, it was not inappropriate, simply on account of Dr. Balunas'

status as a non-examining medical consultant, for the ALJ to rely on Dr. Balanus'

conclusion that Bentley could perform some work.  When an ALJ relies on a non-

examining source who "did not have the opportunity to review" later submitted

medical evidence, especially when that evidence "reflects ongoing treatment," we

generally require "'some indication that the ALJ at least considered these [new]

facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Fisk v. Astrue,* 253 Fed. Appx. 580, 585 (6th Cir. 2007)). Indeed, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence. *Lee v. Comm'r of Soc. Sec.,* 529 Fed. Appx. 706, 713 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i)).

It is true that Dr. Balunas' opinion was issued on April 6, 2015, and he did not have the benefit of Dr. Harris' opinion. But the ALJ clearly considered the "new facts" in the record after Dr. Balanus issued his opinion. *See Blakley,* 581 F.3d at 409. One such set of "new facts" is Dr. Harris' medical opinion, which the ALJ discussed and gave some weight. Further, the ALJ can reasonably credit the opinion of a reviewing medical source, despite the fact that the source did not have access to the entire record, where the conclusion that the claimant retained the capacity to work was supported by the totality of the medical and vocational evidence in the record. *Glasgow v. Comm'r of Soc. Sec.,* 690 Fed. Appx. 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.,* 343 Fed. Appx. 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state agency physician's opinion that is not based on all of the medical evidence in the record if the ALJ considers any evidence that the physician did not consider)). Here, the ALJ expressly

considered Dr. Harris' records and opinion and, as discussed above, those records suggest that Bentley is not as limited as she alleges.  Further, the ALJ sufficiently supported his decision to discount Dr. Harris' opinion.  Moreover, the ALJ subjected Dr. Balunas' opinion to scrutiny as evidenced by the ALJ's finding that Bentley had moderate restrictions in activities of daily living while Dr. Balunas opined that Bentley was only mildly impaired in this area.  (Tr. 19); *see Kepke v. Comm'r of Soc. Sec.*, 636 Fed. Appx. 625, 632 (6th Cir. 2016) ("Here, the ALJ's decision indicates that he subjected Dr. Balunas's opinion to at least some scrutiny, because the ALJ disagreed with Dr. Balunas's assessment of Kepke's limitations in her activities of daily living and social functioning, and applied even greater restrictions in this area than Dr. Balunas opined were appropriate.").  Thus, the undersigned finds no error in the ALJ's treatment of Dr. Balunas' opinion.

The parties also disagree on whether the ALJ's assessment and reliance on GAF scores was appropriate.  On the one hand, it is true that the Social Security Administration does not endorse the GAF scale for "use in the Social Security and SSI disability programs" because a GAF score is not determinative of an individual's RFC and has concluded that GAF scores have no "direct correlation to the severity requirements in [the] mental disorders listings."  *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (August 21, 2000).  On the other hand, while GAF scores may not serve

as the sole basis for making a disability determination, the Sixth Circuit has

indicated that the scores may be taken into account in considering the record as a

whole.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235,241 (6th Cir. 2002); *see also*

*Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.

2006).  Here, the ALJ merely considered Bentley's higher range GAF score

assessments as one factor amongst many in evaluating her disability.  That is, the

ALJ found the GAF scores of 50 were consistent with Bentley's ability to work

and the lower scores were, like Dr. Harris' opinions, inconsistent with the medical

and other evidence of record.  The undersigned finds no error in the ALJ's

assessment of GAF scores.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 22, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

22

## **CERTIFICATE OF SERVICE**

I certify that on February 22, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Sara Krause, acting in the absence of
Tammy Hallwood, Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov
